Gerald F. WEILAND and Carol Ann Weiland,
Plaintiffs-Respondents,

v.

Daniel G. PAULIN and Joan E. Paulin, Defendants-
Appellants.†

Court of Appeals

*No. 02–0826. Submitted on briefs October 10, 2002.—Decided
November 13, 2002.*

2002 WI App 311

(Also reported in 655 N.W.2d 204.)

† Petition to review granted 4-24-03.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Joseph J. Kroening* of *Stevens & Kroening, LLC* of Menomonee Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gerald H. Antoine* of *Huiras, Farrell & Antoine, S.C.* of Port Washington.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. NETTESHEIM, P.J.  Daniel G. and Joan E. Paulin appeal from a summary judgment in favor of Gerald F. and Carol Ann Weiland. The Paulins purchased a lot in a subdivision developed by the Weilands. The Weilands commenced this action against the Paulins for erecting a manufactured structure on their lot in violation of the Declaration of Restrictions governing the subdivision. The trial court granted summary judgment in favor of the Weilands, permanently enjoining the Paulins from placing a manufactured structure on their lot and ordering them to remove or raze the structure already existing.

¶ 2.  The summary judgment record demonstrates that there is no genuine issue of material fact on the question of whether the Paulins violated the deed restrictions placed on the property they purchased from the Weilands. We therefore affirm the trial court's grant of summary judgment to the Weilands. On our own motion, we further conclude that this appeal is frivolous. We remand to the trial court for a hearing to determine the Weilands' reasonable fees, costs and

attorney fees in responding to this appeal. All costs assessed shall be paid solely by the Paulins' appellate counsel.

## *FACTS*

¶ 3.   The Weilands are the developers of Meadowview Estates, a subdivision located in the village of Fredonia. The Weilands also reside in Meadowview Estates and are the sole members of the Architectural Control Committee. In conjunction with their development of "Addition No. 2" to the Meadowview Estates, the Weilands recorded a "Declaration of Restrictions for Meadowview Estates Addition No. 2" in the office of the Register of Deeds for Ozaukee County. These deed restrictions provided that no building or structure could be placed on a lot until complete plans and specifications had been submitted to and approved by the Architectural Control Committee. In addition, the restrictions provided that no manufactured home or structure shall be placed upon any lot.

¶ 4.   In May 1999, the Paulins purchased Lot 13 in Meadowview Estates Addition No. 2. The Weilands' listing real estate agent, James L. Lippe, prepared the Offer to Purchase for the Paulins. Prior to preparing the Offer to Purchase, Lippe showed and explained to the Paulins the Declaration of Restrictions, including provisions requiring the submission of building plans and specifications to the Architectural Control Committee and the need to obtain written approval from the Committee prior to construction. Lippe also explained a provision in the Declaration that prohibited the construction or placement of manufactured structures or homes on any lot within the subdivision.

¶ 5. Prior to closing the sale of Lot 13, Lippe provided the Paulins with a title insurance commitment, which noted the existence of and contained a complete copy of the Declaration of Restrictions. The Paulins closed on Lot 13 on May 28, 1999. At the closing they submitted to the Weilands, and the Weilands approved, plans and specifications for a two-story "stick-built" home.[1] The Paulins never built that home.

¶ 6. On June 22, 1999, the Paulins entered into a Vacant Land Listing Contract with Lippe to sell Lot 13. The Listing Contract specifically referred to the Declaration of Restrictions. The Paulins did not receive any offers on Lot 13. Between October and December 2000, the Paulins constructed a basement foundation on Lot 13, and on January 31, 2001, they placed a manufactured dwelling on the foundation. Prior to this, the Paulins did not submit plans and specifications to the Weilands for approval of the manufactured dwelling. When Gerald Weiland became aware of the structure, he approached Daniel Paulin who provided him with a drawing and floor plan of the manufactured dwelling.

¶ 7. On February 5, 2001, the Weilands directed their attorney to send a letter to the Paulins advising them that the dwelling was in violation of the Declaration of Restrictions and directing them to remove it. After further communications through their attorneys, the Weilands filed this action on April 5, 2001, to enforce the Declaration of Restrictions. The Weilands requested an injunction barring the Paulins from erecting or continuing to erect a structure on Lot 13 without prior written approval from the Architectural Control

---

[1] The parties use the term "stick-built" to refer to a home constructed on site.

Committee and for an order compelling the removal of the manufactured structure on Lot 13.

¶ 8.  On April 24, 2001, the trial court granted the Weilands' request for a temporary injunction. The Weilands thereafter filed a motion for summary judgment based on the Paulins' violation of the Declaration of Restrictions. The trial court granted judgment in favor of the Weilands on January 24, 2002. The court determined that the restrictive covenants contained in the Declaration of Restrictions were unambiguous and reasonable and that the Paulins "proceeded at their peril when they failed to get architectural approval as required in the deed restrictions." Based on this determination, the trial court permanently enjoined the Paulins from erecting a structure or continuing to erect a structure on Lot 13 without first receiving approval from the Architectural Control Committee. The court further ordered the Paulins to remove or raze the manufactured structure presently located on Lot 13.

¶ 9.  The Paulins appeal.

## DISCUSSION

### Summary Judgment

¶ 10.  When reviewing a grant of summary judgment, we apply de novo the standards set forth in Wis. Stat. § 802.08 (1999–2000).[2] *Voss v. City of Middleton,* 162 Wis. 2d 737, 748, 470 N.W.2d 625 (1991). Pursuant to § 802.08(2), summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version.

material fact and that the moving party is entitled to a judgment as a matter of law."

¶ 11.   We first address the Paulins' claim that they were unaware of the deed restriction requiring them to obtain prior approval of their manufactured dwelling.[3] However, they provide no citation to the record to support this or any other fact. Such failure is a clear violation of WIS. STAT. RULE 809.19(1)(d) and (3) of the rules of appellate procedure, which requires the party to set out facts "relevant to the issues presented for review, with appropriate references to the record." An appellate court is improperly burdened where briefs fail to consistently and accurately cite to the record. *Meyer v. Fronimades*, 2 Wis. 2d 89, 93–94, 86 N.W.2d 25 (1957). Moreover, the Paulins' claim lack's credibility. They obviously knew of the "prior approval" provision because they had previously complied with it when they obtained approval of their proposed "stick-built" home.

¶ 12.   Next, the Paulins contend that the trial court erred in determining that the restrictions contained in the Declaration of Restrictions applied to their manufactured dwelling. The Paulins' argument is premised upon the distinction between a "manufactured home" and a "manufactured dwelling."[4] However, as

---

[3] In making this argument, the Paulins seem to assume that their claimed ignorance of the deed restrictions would provide a defense. We seriously question that assumption given that the deed restrictions were properly recorded and the Paulins complied with the restrictions when they submitted the plans for the "stick-built" dwelling for approval.

[4] In making this argument, the Paulins rely on the Wisconsin Administrative Code which defines "manufactured home" as

the Paulins misrepresent the trial court's summary judgment ruling. The trial court did not rule that the Paulins' structure violated the deed restrictions against manufactured homes or structures. Instead, the trial court determined that the Paulins violated the deed restriction requiring Architectural Control Committee approval of proposed building plans and specifications before any construction. In fact, the trial court expressly declined to address the distinction between manufactured homes and dwellings, deeming it irrelevant in light of the Paulins' failure to comply with the deed restriction requiring prior submission and approval of any proposed building plans and specifications. We therefore limit our consideration of this case to the grounds upon which the trial court actually awarded summary judgment to the Weilands.

¶ 13.   We begin by observing that the interpretation of a restrictive covenant is a question of law that we review independently of the trial court. *Zinda v. Krause*, 191 Wis. 2d 154, 165, 528 N.W.2d 55 (Ct. App. 1995). Whether the language of a restrictive covenant is ambiguous is also a question of law. *Id.* The language in

---

a "structure, transportable in one or more sections . . . which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation." Wis. Admin. Code § COMM 27.10(3). Because the Paulins' manufactured dwelling is not built on a permanent chassis, they argue that it is not covered by the deed restrictions. Although this issue is not dispositive, we nevertheless note that we are unpersuaded by the Paulins' argument. While we acknowledge that the administrative code distinguishes between "manufactured homes" and "manufactured dwellings," Wis. Admin. Code § COMM 27.001 (Note), the deed restrictions prohibit any manufactured *structure*. The home delivered to the Paulins' lot clearly falls under this restriction.

a restrictive covenant is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.* at 165–66. However, if the intent of a restrictive covenant can be clearly ascertained from the covenant itself, the restrictions will be enforced. *Id.* at 166.

¶ 14. The restriction at issue provides in relevant part:

> 11. **PLAN APPROVAL**. In order to maintain harmony and appearance, and to protect the owners of all lots in this subdivision, and whether or not specifically stated in any conveyance of a lot, it is hereby declared, and the owner or occupant of each and every lot by acceptance of title or by taking possession covenants and agrees, that *no building, wall, or other structure shall be placed upon any lot in this subdivision unless and until complete plans and specifications therefore, together with the intended grade, a plot plan and a sketch or view thereof, have been submitted to and approved in writing by a member of the Architectural Control Committee . . . .* The Architectural Control Committee may refuse to approve any plans or specifications on any ground, including purely aesthetic grounds, which in the sole and uncontrolled discretion of the Committee shall seem sufficient. *No manufactured home or structure shall be constructed or placed upon any lot in this subdivision.* (Emphasis added.)

¶ 15. As noted, the trial court granted summary judgment to the Weilands because the Paulins failed to submit the plans and specifications for the manufactured dwelling to the Architectural Control Committee for approval. The ruling is unassailable because the Paulins themselves admitted that they did not comply with this requirement of the deed restrictions.[5]

---

[5] It is undisputed, as it was before the trial court, that the Paulins contracted to place the manufactured dwelling on Lot

¶ 16. That determined, we next turn to the reasonableness of the deed restrictions. The Paulins represent that the trial court "failed to consider whether the restriction was reasonable under the facts and circumstances" of this case. Here again the Paulins misrepresent the trial court's ruling. The trial court specifically addressed the reasonableness of the deed restriction, stating:

> It is the finding of this Court that the covenant that ban structures such as those erected by the [Paulins] are neither arbitrary nor ambiguous and clearly state the requirements that must be fulfilled before a home can be constructed on the subject premises. When considering all the pleadings, papers and filings in this matter, in the light most favorable to the [Paulins], it is this Court's opinion that from all the facts presented, the restrictions that are the subject of this action are reasonable and were enacted for a legitimate purpose.

¶ 17. In determining whether a deed restriction is reasonable, a court must inquire (1) whether it is reasonable under all the facts and circumstance of the

13 prior to obtaining approval from the Architectural Control Committee. At his deposition, Daniel Paulin testified that he did not submit any plans to the Weilands, the sole members of the Architectural Control Committee, for the home that was delivered to Lot 13. He stated that he "overlooked" doing so. He additionally stated that he had no discussions with the Weilands from the time of the closing on Lot 13, when he submitted plans for a "stick-built" home, and the time of the delivery of the manufactured dwelling in January 2001. By proceeding with the delivery and assembly of the manufactured dwelling on Lot 13 without prior approval from the Architectural Control Committee, the Paulins clearly violated the deed restrictions on their property.

transaction in light of the situation, business, and objects of the parties; and (2) whether it is for a just and honest purpose, for the protection of the legitimate interest of the party in whose favor it is imposed. *Dodge v. Carauna*, 127 Wis. 2d 62, 65, 377 N.W.2d 208 (Ct. App. 1985).

¶ 18. The Declaration of Restrictions states its purpose is to "maintain harmony and appearance, and to protect the owners of all lots in this subdivision." The history of the subdivision demonstrates that the restrictions have been applied uniformly and have been relied upon by other homeowners in the subdivision.[6] In fact, the Paulins do not challenge the reasonableness of the restrictions except as the Weilands seek to apply them to the manufactured dwelling after the fact. They contend that the court failed to consider whether it was reasonable to enforce the restrictions given the facts and circumstances of this case, "i.e., now that the home is built, does it degrade the appearance of the neighborhood or reduce the value of surrounding homes." However, by its very terms, the restriction is to be applied *prior* to a home being constructed. The inquiry set forth in *Dodge* is not whether it is reasonable to enforce the restriction *after it has been violated* but whether the restriction is reasonable at the time it is intended to be applied. *See id.* at 65.

¶ 19. We conclude that the restriction, imposed by the Weilands in an effort to maintain the appearance and continuity of the subdivision, is reasonable and we uphold the trial court's ruling to the same effect.

---

[6] Daniel Weiland stated in his affidavit that the Architectural Control Committee had refused to approve plans for a manufactured home or dwelling on two other occasions. Those lot owners had complied with the restrictions and constructed "stick-built" homes.

¶ 20. Moreover, the reasonableness requirement for a deed restriction is grounded in principles of equity. *McKinnon v. Benedict*, 38 Wis. 2d 607, 619, 157 N.W.2d 665 (1968). A fundamental principle of equity is that equitable relief will be denied to a party when "the things from which [a party] seeks relief are the fruit of *its own* wrongful or unlawful course of conduct." *Lake Bluff Housing Partners v. City of S. Milwaukee*, 2001 WI App 150, ¶ 13, 246 Wis. 2d 785, 632 N.W.2d 485 (citation omitted), *review denied*, 2002 WI 23, 250 Wis. 2d 556, 643 N.W.2d 93 (Wis. Jan. 31, 2002) (No. 00–1958); *see also Zinda*, 191 Wis. 2d at 174 ("One of the fundamental tenets of equity is that a person seeking equitable relief must come to the court with clean hands."). Here, the Paulins have the temerity to demand relief from the very deed restriction that they have admittedly and patently violated. Had they complied with the restrictions, the Paulins would not be in their self-created dilemma of having to remove the illegal structure from their lot.

### Frivolousness

¶ 21. On our own motion, we declare the Paulins' appeal frivolous under Wis. Stat. Rule 809.25(3)(c)2. This Rule provides that an appeal is frivolous when "[t]he party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." When an appellant's attorney should have known that the assertion of trial court error was without any reasonable

152

basis in law or equity, the appellate court may conclude the appeal is frivolous without the necessity of a remand for fact-finding. *Vierck v. Richardson*, 119 Wis. 2d 394, 399, 351 N.W.2d 169 (Ct. App. 1984).

¶ 22. We declare the Paulins' appeal frivolous based on a number of transgressions, all of which we lay at the feet of the Paulins' counsel. First, counsel failed to fulfill his professional duty to provide this court with all of the facts relevant to the appeal with appropriate references to the record. *See* WIS. STAT. RULE 809.19(1)(d).

¶ 23. Second, counsel's presentation of the facts regarding the Paulins' claimed ignorance of the deed restriction borders on outright deceit because the record demonstrates that the Paulins had previously complied with the restriction.

¶ 24. Third, and most disturbingly, counsel has misrepresented the trial court's rulings. Based on the appellant's brief, we were led to believe that the trial court had ruled that the Paulins' structure violated the prohibition against manufactured homes or structures and that the court had not addressed the reasonableness of the deed restrictions. Only after reading the Weilands' respondent's brief and the trial court's decision did we learn that the court had actually based its decision on the Paulins' failure to submit their plans and specifications for the manufactured home to the Architectural Control Committee for approval and that the court had also addressed the reasonableness of the deed restrictions.

▬▬▬

¶ 25. A forthright and professional lawyer will reveal and address on appeal the full extent of the relevant facts and the trial court's reasoning. As a

reviewing court, we are entitled to be apprised of all grounds for a trial court's ruling, not just those grounds that appellate counsel chooses, or, more alarmingly, fabricates.

¶ 26. The Rules of Professional Conduct at SCR 20:3.3(a), entitled "Candor toward the tribunal," state that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal." In addition, the "Standards of Courtesy and Decorum for the Courts of Wisconsin" at SCR 62.02(3) provide that "Lawyers shall do all of the following: ... (e) Abstain from knowingly deceiving or misleading another lawyer or the court." Here, counsel had an obligation to present us with an accurate and truthful account of the trial court proceedings. He failed to discharge this duty. In *Geneva National Community Ass'n., Inc. v. Friedman*, 228 Wis. 2d 572, 598 N.W.2d 600 (Ct. App. 1999), we relied upon violations of both the Rules of Professional Conduct and the Standards of Courtesy and Decorum for the Courts of Wisconsin in upholding sanctions imposed by the trial court. *Id.* at 583–86. In *Aspen Services, Inc. v. IT Corp.*, 220 Wis. 2d 491, 497–98, 583 N.W.2d 849 (Ct. App. 1998), we also relied, in part, on the courtesy and decorum standards in upholding a sanction-based reduction in attorney fees. We rely on the same authorities here in declaring the Paulins' appeal frivolous.

¶ 27. Fourth, we are troubled by counsel's challenge to the reasonableness of the deed restrictions. As we have noted, such a challenge is grounded in equity. *McKinnon*, 38 Wis. 2d at 619. In the face of the Paulins' clear and admitted violation of the deed restrictions, and in the face of the fundamental principle that one who seeks equity must do equity, counsel's argument that the Paulins were nonetheless entitled to equitable

154

relief is a nonstarter. A minimally competent and informed lawyer would not make such a worthless argument.

¶ 28. Our supreme court has said that it will "support sanctions directed personally at those attorneys whose slipshod practices abuse the system, create unnecessary work, and delay speedy justice for others." *State v. Smythe*, 225 Wis. 2d 456, 472, 592 N.W.2d 628 (1999). Our time on this case would have been better directed to the numerous meritorious appeals pending in this court. Similarly, the Weilands and their attorney should also have been spared the time, expense and aggravation resulting from this appeal.

¶ 29. This case is so far beyond the pale that we, on our own motion, declare the appeal frivolous. We conclude that the Weilands are entitled to the costs, fees and reasonable attorney fees incurred as a result of this appeal pursuant to WIS. STAT. RULE 809.25(3)(a), and that those fees and costs shall be assessed solely against the Paulins' appellate counsel pursuant to RULE 809.25(3)(b).

### *CONCLUSION*

¶ 30. We conclude that there is no genuine issue of material fact and that the Weilands are entitled to judgment as a matter of law. We declare the Paulins' appeal frivolous and we remand to the trial court for a hearing and determination as to the reasonable costs, fees and attorney fees incurred by the Weilands in defending against the Paulins' appeal. Such costs and fees shall be assessed solely against the Paulins' appellate counsel.

*By the Court.*—Judgment affirmed and cause remanded with directions.